Our final case of the day is United States v. Matthews. Mr. Henderson. Good morning, Your Honors. May it please the Court. I'm Peter Henderson. I represent Antoine Matthews. Let me start with some of the procedural portions of this case, in particular the standard of review. This is a somewhat unusual case. Mr. Matthews was sentenced originally to a mandatory minimum term of imprisonment of 20 years. He appealed. He could not challenge the sentence because any error would be harmless as he was sentenced to the minimum term, and so he challenged the conditions in terms of supervised release. The parties submitted a joint motion to remand for a full resentencing under Thompson, and at that point back in the district court, the government dismissed its previously filed 851 notice, meaning the mandatory minimum sentence was now 10 years rather than 20. And so an issue that was not raised in the first appeal was then re-raised at the resentencing hearing, namely this enhancement under the Section 3B1.1. We think that Mr. Matthews has done everything that he can to preserve this issue for the court's review. He certainly made this argument at the first sentencing, and he again re-raised his objection to the enhancement under 3B1.1 at the resentencing hearing. And the unusual removal of the 851 notice is the reason it was not raised on the first appeal, because it would have been harmless error at best. Now as to the standard of review, there are a number of cases in this circuit asserting different standards. Our proposal in this case is that the court's review of whether the facts, as found by the district court, merit an enhancement under 3B1.1 is a matter of law that would be reviewed de novo. We are not contesting the facts that the government presented, so I think the government is wrong to say that this is an issue of clear error. A number of the cases, such as Weaver and Figueroa, treat this as a matter of law, meaning do these facts establish or support this enhancement? We think these facts don't. The main problem with the facts in this case is that we had two conspiracies going on. One was the Zambrano conspiracy in Northern Illinois, and one was what I'll call the Matthews conspiracy, although we don't know exactly who was involved with that, out of Cleveland. And my client was a customer of the Zambrano conspiracy, and so all of the information that was presented to the district court concerned the Zambrano conspiracy. We know all about its inner workings. We know who's on top, who's just a courier, who's a middleman. But we know next to nothing about Mr. Matthews. We know that he showed up in Chicago, or Joliet, a few times. We know that at one point co-conspirators appeared on his behalf to receive a shipment or to pick up heroin. But we don't have information about their relationships. All of the evidence that the government uses to suggest that Mr. Matthews is in fact in charge here or is in fact a supervisor are normal incidents of conspiracies where one person might play one role. In this case, for example, I think it's clear that Mr. Matthews was the link to Zambrano. He's the one who had the contact. Egler and Hall, who were co-conspirators, also involved in the drug trade in Cleveland, used that connection to obtain heroin as well. But we don't know if Mr. Matthews received a larger share of the profits. We don't know if he had any control over Egler and Hall. Well, actually, we do have phone calls that suggest that he had control over them, giving them various instructions along the way. Well, we know that Mr. Matthews is the link to Zambrano and that he's previously dealt with Zambrano, so that when Egler and Hall go to meet Zambrano to pick up the heroin, Mr. Matthews is, of course, going to give them instructions on how do you deal with this person. Right, so why is that not enough to support the court's finding that he supervised them? Because that's a normal incident of a conspiratorial relationship. That doesn't suggest that he had any control over them. We drew an analogy. The court has drawn an analogy to supervisors as judges are supervised by or appointed by the United States government, et cetera. We've drawn this analogy with lawyers. If a lawyer is presenting an oral argument for a case that is another lawyer's, lead counsel, who's not appearing, will tell that person, here's how you present an oral argument, here's how you need to speak about this case, speak to these particular judges, et cetera. They'll give them instructions, but that doesn't mean that they are supervising them as a role. Because, again, what the enhancement refers to is not one-time transactions where somebody may say, I want you to do this for me and I'll tell you how to do it. It's about a role. It means continuous, ongoing supervision. And the evidence here is just that we had a one-time transaction where Mr. Matthews was telling them how to conduct the transaction, but that doesn't rise to the level of an ongoing, continuous role that this court has required. For example, in the Must Read case, the defendant there had somebody else transport marijuana for him, got him a pager, et cetera, told him what to do. And the court said, that's just a favor. That enables them as conspirators to work more efficiently together. That doesn't suggest a supervisory role. One thing that, for example, the court in Weaver said was one characteristic of a manager or supervisory role is the ability to punish or the ability to control, to impose a sanction if their orders are not carried out. And we just don't have any evidence of that here. It's that lack of evidence. We don't know if Mr. Matthews got a larger cut of the profits. We don't know if he controlled how the heroin was distributed in Cleveland. We don't know if Mr. Matthews recruited Eggler and Hall or whether it was the other way around or whether they all joined up together. We just don't know. And so that's the basis of our objection here. I think the court said more recently that mere speculation is not enough to sustain this enhancement. And we think that the facts presented here don't arise to more than just speculation about whose role was whose. So I'll reserve the remainder of my time for rebuttal. Thank you. Certainly, Mr. Henderson. Mr. Lee. May it please the Court. My name is Stephen Lee on behalf of the United States. The district court here did not err in finding that the defendant managed and supervised others based on the instructions that he gave one of his couriers about counting money and what to tell the people that he had negotiated a deal with in a series of calls in August 2012 during the course of one of these deals, as well as based on the evidence showing that the defendant had used couriers in other transactions that he had negotiated with the people here in the Joliet area. The district court properly found that the defendant here was the common link between these multiple drug deals, which involved multiple people. We know from the record that the defendant negotiated two deals in July of 2012, during one of which agents saw two cars from Ohio participate in the deal and leave where the deal was to take place. We know that two couriers came to Joliet for the August 2012 deal, and the defendant gave instructions to co-defendant Eggler during that deal about what to do, what to tell people, when to count the money, and how to complete this deal that he had arranged. And we also know that in the October deal, the defendant came with two men and a woman, and that the woman was intended to drive the car with the heroin back from Joliet to Cleveland. Based on all this, the district court did not err in finding that the defendant directed and supervised others, and that the aggravating rule enhancement was appropriate in this case. Unless the court has any further questions, the government asks that you affirm the sentence. Thank you, Mr. Lee. Anything further, Mr. Henderson? Just to say, there were multiple people involved in these transactions, and it's undisputed that Mr. Matthews was the contact with Mr. Zambrano. We don't know the woman's name. We don't know the names of the two people who came with Mr. Matthews to these deals. To characterize them as couriers is wild speculation. We don't know if they were couriers. Certainly, Mr. Hall submitted an affidavit at sentencing saying, no, we were all in this together. We were co-conspirators. So I'd ask the court to reverse and not indulge in the government's speculation. Thank you. Thank you very much, counsel. The case is taken under advisement, and the court will be in recess. Thank you.